# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:06-cr-0083-PMP-LRL |
| ) | Motion to Suppress (#21) |
| DAVID GLENN EVANS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## REPORT & RECOMMENDATION

The defendant, David Glenn Evans, is awaiting trial on charges of producing, transporting and possessing child pornography, in violation of 18 U.S.C. §§ 2251(a), 2252A(a)(1), and 2252A(a)(5)(B), respectively. He has filed a Motion to Suppress Evidence and Statements (#21), in which he contends that (1) the affidavit in support of a search warrant for his home and computer lacked probable cause; (2) the search warrant was overbroad; and (3) the statements he made to the police following the execution of the search warrant were the product of police exploitation of the unlawful search. Because the issues raised in the motion concern only the contents of the affidavit and search warrant, no factual issues need be resolved. Accordingly, an evidentiary hearing is unnecessary.

### THE FACTS

On December 16, 2004, on the basis of the affidavit of Detective Michael Castaneda of the Las Vegas Metropolitan Police Department (Metro), a state judge issued a search warrant for Evans' residence, including his computer and computer media.[1] At the time, Det. Castaneda

---

[1] The affidavit and warrant are attached to Evans' motion (#21) as Exhibit 1.

1  was a twelve-year veteran of Metro and had been assigned to the Internet Crimes Against
2  Children Task Force for at least five years.  He had received extensive training in the
3  investigation of sexual crimes against children, and had participated in more than 300
4  investigations of suspected sexual exploitation of children.  The warrant, which was executed
5  on the day it was issued, directed the police to search for electronic and physical evidence of
6  activities involving child pornography.  Following the execution of the warrant, Evans was
7  arrested, and while in custody, gave a lengthy statement to the police.

8  Distilled to its essentials, Det. Castaneda's affidavit sets forth the following factual
9  scenario.  In November, 2004, Robert Devries, a private citizen from San Diego with no
10 criminal record, rented a room in Evans' condominium.  Devries had taken a job at a Las Vegas
11 bank, where he would work Mondays through Thursdays, then return to San Diego for three-day
12 weekends with his wife, who maintained their residence in San Diego.  When Evans and
13 Devries met to discuss the proposed room rental, Devries learned that Evans was a first-year
14 resident pediatrician at University Medical Center.  At some point thereafter, Devries learned
15 that Evans was Big Brothering a ten year old Hispanic boy, who Evans had recently taken to the
16 Shark Reef at the Mandalay Bay Casino.  Because Devries had had difficulty accessing the
17 internet on his laptop computer while in Evans' condo, Evans had extended an open invitation
18 to Devries to use Evans' computer both to access the internet and to "burn" CDs.

19 On Monday, December 13, 2004, Devries took Evans up on his offer.  While looking for
20 a drive that could be used for burning a CD, Devries opened a "back up" drive, on which he saw
21 a folder called "me and Jason's camping trip 2001."  He opened the folder and was presented
22 with a large number of thumbnail images.  He clicked on several thumbnails, and, as described
23 by Off. Castaneda, saw the following:

24  ... a nude white male juvenile approximately 8-11 years of age, bent
    over pulling his butt cheeks apart exposing his anus.  That this
25  folder contained approximately 80 images.  Devries clicked on a
    couple more images and noticed they were of the same white male
26  juvenile.  In some of the images he was masturbating, or laying

2

1
2
3
4
> down with an erect penis with a lose (sic) fitting condom on it. The (sic) Devries noticed pictures with the person he knows as Dr. David Evans standing next to this same white male juvenile, however they were clothed. There was an image of Evans with his shirt off. That these images appeared to have the same background, that they were taken in the woods.

5 Castaneda Affidavit at p. 7, ¶ 15. Of the few thumbnail images he opened, none depicted Evans

6 engaged in sexual activity of any sort, with or without the white male juvenile. When he closed

7 the folder, Devries noticed another folder called "me and Jason's camping trip folder #1," which

8 he did not open. Instead, he logged off the computer, called his wife in California, and

9 described what he had seen on Evans' computer. She sought the advice of their pastor as to

10 what he should do.

11 On Tuesday, December 14, 2004, Devries saw Evans at the condo. He told Evans he was

12 thinking of taking his family to the Shark Reef at Mandalay Bay, and wondered how expensive

13 it was. Evans checked the price indicated on the Shark Reef ticket stub he had placed on his

14 bedroom mirror.

15 On Wednesday, December 15, 2004, Devries tried but was unable to meet with an FBI

16 agent. He was determined to talk to an investigator without delay because he was scheduled to

17 leave town the next day for a vacation. A series of phone calls led to a 33-minute, tape recorded

18 interview with Det. Castaneda, in which Devries described in considerable detail the events

19 summarized above. As set forth in Castaneda's affidavit, Devries also described in detail the

20 computer and related equipment:

21
22
23
> That Evans' computer is a Dell Laptop black and gray in color. It is sitting on a desk, with some external hard drives next to the Laptop, as well as a digital camera, a palm pilot, some musical device and ... some large binders which contained blank disk, music disks, digital video disk and computer software.

24 Castaneda Affidavit at p. 7, ¶¶ 12 and 11. At the conclusion of the interview Det. Castaneda

25 asked Devries whether "there was anything that had occurred between Evans and him." Devries

26 said no, and that as far as Evans knew, Devries was leaving on vacation the next day and

1 wouldn't be back until after Christmas.

2 Castaneda's affidavit reflects that he independently confirmed that Evans lived in the
3 condo in question, and that he was a licensed medical practitioner. The affidavit also contains
4 an extensive discussion of the known *modus operandi* of "preferential child sex offenders," *i.e.*,
5 sex offenders whose victims of choice are children.

6 The search warrant authorized the search of the condo and the seizure of, among other
7 things, computers and related hardware, software, equipment, devices and disks capable of
8 creating or storing information or images in electronic or magnetic form, and the data stored
9 thereon, that "does or could depict the suspect David Evans or other occupants of the residence
10 and/or any minors engaged in any form of sexual activity or are the subject of a sexual portrayal,
11 or any material which lists names, addresses, and phone numbers of individuals or records of
12 conversations with individuals who have similar sexual interests and would tend to identify
13 persons, adult or juvenile, who are or may be involved with suspect David Evans or other
14 occupants of the residence." The warrant also authorized the seizure of wide variety of physical
15 items such as magazines, photographs or movies depicting juveniles engaged in sexual activity.

**DISCUSSION**

*1. Probable Cause*

18 Evans contends that the judge who issued the search warrant lacked an adequate basis
19 for doing so because the affidavit in support of the warrant provided no indicia of the informant
20 Devries's credibility or reliability. Evans complains that Castaneda's affidavit contains no
21 indication that Devries had provided accurate information to the police in the past, or that the
22 police had corroborated the information Devries provided.

23 In determining whether to issue a search warrant, the magistrate's task is "simply to
24 make a practical, common-sense decision whether, given all the circumstances set forth in the
25 affidavit before him ... there is a fair probability that contraband or evidence of a crime will be
26 found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause is a

1  fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not
2  readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232.  "Probable cause does
3  not require proof beyond a reasonable doubt, but only a showing of the probability of criminal
4  activity."  *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993).

5    In *Gates*, the Supreme Court abandoned the rigid "two-pronged test" under *Aguilar v.*
6  *Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969), for determining
7  whether an informant's tip establishes probable cause for the issuance of a search warrant.  In
8  its place the Court substituted the "totality of the circumstances" test.  Acknowledging that
9  although an informant's veracity, reliability and basis of knowledge are relevant in determining
10 the value of his or her information, the Court observed that these elements should not

> be understood as entirely separate and independent requirements to
> be rigidly exacted in every case . . . .  Rather, . . . they should be
> understood simply as closely intertwined issues that may usefully
> illuminate the common sense, practical question whether there is
> "probable cause" to believe that contraband or evidence is located
> in a particular place.

15 462 U.S. at 230.  These elements "are better understood as relevant considerations in the
16 totality-of-the-circumstances analysis that traditionally has guided probable-cause
17 determinations: a deficiency in one may be compensated for, in determining the overall
18 reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."
19 *Id*., at 232.  The Court concluded that

> [t]he task of the issuing magistrate is simply to make a practical,
> commonsense decision whether, given all the circumstances set
> forth in the affidavit before him, including the "veracity" and
> "basis of knowledge" of persons supplying hearsay information,
> there is a fair probability that contraband or evidence of a crime
> will be found in a particular place.  And the duty of a reviewing
> court is simply to ensure that the magistrate had a "substantial basis
> for ... conclud[ing]" that probable cause existed. (Citation omitted.)

25 *Id*., at 238-239.

26    Evans objects to Det. Castaneda's acceptance of Devries's information at "face value"

5

without it being independently corroborated. It is true, as it so often is, that additional investigative steps could have been taken prior to formally requesting the search warrant. The question, however, is whether the totality of the circumstances as set forth in Castaneda's affidavit constituted a "substantial basis" for the issuing judge to conclude "that a search would uncover evidence of wrongdoing...." *Gates*, 462 U.S. at 236. The court finds that it does.

In *United States v. Elliott*, 893 F.2d 220 (9th Cir. 1990), amended in non-relevant part in 904 F.2d 25 (9th Cir. 1990), a search warrant for the defendant's apartment was based solely on uncorroborated information supplied by a woman named Wilson who had been living with the defendant until the day she took it upon herself to contact the police and report that the defendant was in possession of marijuana and cocaine. In an appearance under oath before a state judge who issued the search warrant, she described in detail the quantity of cocaine and marijuana presently in the apartment, the large amount of marijuana that had been there a week earlier, which she said the defendant was trying to "get rid of," and the marijuana growing operation taking place in "the back room, behind the apartment." *Elliott*, 893 F.2d at 222. In finding that sufficient indicia of probable cause existed, the court said:

> An informant's description of illegal activity is sufficient to establish probable cause if the totality of the circumstances indicate that the tip is reliable. (Citation omitted.) "'A detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability.'" *United States v. Estrada*, 733 F.2d 683, 686 (9th Cir. 1984), *quoting United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976).
>
> In this case, Wilson provided detailed information regarding the amounts of drugs present, and regarding the marijuana-growing operation. *See Gates*, 462 U.S. at 245 (citing informant's "range of details" regarding the alleged crime as an important indicia of reliability). In testifying that she had lived with Elliott until the day she came forward, she showed an adequate basis for her knowledge. *See id.* at 230 ("basis of knowledge" is "highly relevant in determining the value of [the informant's] report"). Moreover, unlike *Gates* and many related informer cases, Wilson was not an anonymous tipper. Rather, she appeared in person before the magistrate and testified under oath. This action provides powerful indicia of veracity and reliability. *See United States v. Hunley*, 567 F.2d 822, 827 (8th Cir. 1977)("independent

6

> corroboration of informant's reliability" unnecessary when "the informant comes forward to give an eyewitness account regarding the crime under oath, and subjects himself to perjury if the information is false.")

*Elliott*, 893 F.2d at 223.

In *United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986), the police arrested one Payton Brown for transporting several pounds of marijuana. Brown told the police that he had obtained the marijuana from the defendant at the defendant's residence on Court Street. He said he'd been in the residence within the previous 24 hours, and had seen the defendant storing and selling marijuana there. The police set forth this information in an affidavit, on the basis of which a judge issued a search warrant for the defendant's residence. The question for the Sixth Circuit was whether this bare bones affidavit, which did not mention that Brown had been arrested or that Brown had shown the police where the defendant lived, was adequate on its face. The court held that the issuing judge did indeed have "a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Id.* at 878. The court wrote:

> In a practical sense, there could hardly be more substantial evidence of the existence of the material sought and its relevance to a crime than Brown's direct viewing of marijuana in Pelham's house. When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the "totality of the circumstances" presents a "substantial basis" for conducting a search for that evidence. In essence, [the officer's] affidavit exhibited on its face "the probability ... of criminal activity." (Citation omitted.)

*See also United States v. Ross*, 713 F.2d 389, 393 (8th Cir. 1983)(affidavit for search warrant sufficient where based solely on detailed information supplied by one citizen informant who was identified in the affidavit, had no motive to falsify, and had a clear basis for his knowledge, *viz.*, as a telephone company employee he overheard an incriminating conversation while checking noise problems on a telephone line).

These analogous cases are particularly instructive. Devries is a citizen informant with no apparent motive to provide false information to the police. He not only identified himself

7

to the law enforcement officials with whom he spokeon the phone, he came to the police department in person and underwent a 33-minute tape-recorded interview with a detective. He provided the police with his own eyewitness account of what he had recently seen and learned. In return for his information he asked for nothing of benefit. He did not request anonymity; he allowed himself to be identified in the affidavit that would be submitted to a judge. Although he did not testify under oath before the judge who issued the warrant, he arguably could be subject to a prosecution for perjury, a category D felony under NRS 199.130, if he were to have "caused" a false affidavit to be signed "for the purpose of securing a warrant for the searching of the premises ... of any other person." The court therefore concludes that, as in *Elliott*, *Pellham* and *Ross*, the totality of the circumstances in this case "provides powerful indicia of veracity and reliability."[2] *Elliott*, 893 F.2d at 223. That no additional investigation was done prior to seeking a search warrant does not undermine the adequacy of the probable cause showing in Det. Castaneda's affidavit.

*2. Breadth of Warrant*

Although the list of things to be seized that is set forth in the search warrant is not a model of logical categorization or syntax, a common sense reading of the list reveals that the scope of the warrant's authorization, as comprehensive as it is, is reasonably related to the nature of the crime being investigated. It is also clear that the warrant authorizes the seizure only of evidence related directly or indirectly to the offense of child pornography. Evans' attack on the warrant is merely a hyper-technical exploitation of the warrant's syntactical weakness and ignores its common sense meaning.

. . .

---

[2] Evans also complains that the affidavit contained no information regarding Devries's ability to render an opinion as to whether a person alleged to be the victim of child pornography is a juvenile. Devries opined that the person whose photos he saw on Evans' computer was between eight and eleven years of age. It hardly takes special training or level of sophistication to discern that an eight, nine, ten or eleven year old child is under the age of eighteen.

*3. Evans' Statements*

Having found that the Fourth Amendment was not offended by Det. Castaneda's affidavit or search warrant, the court rejects Evans' argument that the statements he made to the police following the execution of the search warrant were the product of police exploitation of the unlawful search.

## RECOMMENDATION

Based on the foregoing, it is the recommendation of the undersigned United States Magistrate Judge that Evans' Motion to Suppress Evidence and Statements (#21) should be denied.

DATED this 10th day of July, 2006.

_____
**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**